UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
   WILBERTO FELIX,

                                   Plaintiff,

                          15 Civ. 9337 (ALC)

          -against-

                          **OPINION AND ORDER**

   NANCY A. BERRYHILL, Acting
   Commissioner of Social Security,

                                Defendant.
-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

This is an action for review of the Commissioner of Social Security's ("Commissioner") final decision that Plaintiff Wilberto Felix is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act. Currently pending are cross motions for judgment on the pleadings. The Court has considered the parties' submissions and for the reasons set forth below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

## BACKGROUND

### I.    Procedural Background

Plaintiff filed an application for Social Security DIB on April 21, 2012, alleging disability since August 15, 2011, because of a ruptured disc in the lumbar spine, a left knee tear, and a left shoulder tear. R.[1] at 245-48, 265. The application was denied. R. at 139-46. Plaintiff then requested a hearing, and two hearings were held on October 18, 2013 and December 3, 2013. R. at 49-129, 147-48. On April 24, 2014, the administrative law judge (ALJ) found that Plaintiff was not disabled:

---

[1] R. refers to the administrative record filed as part of the Commissioner's Answer.

although unable to perform any of his past relevant work, Plaintiff could perform several sedentary jobs identified by the vocational expert. R. at 26-43. On September 24, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the "final" decision on Plaintiff's claim for benefits. R. at 1-6. Plaintiff then appealed the decision to this Court.

## II. Factual Background

Plaintiff suffers from adhesive capsulitis of the left shoulder, arthritis of the right shoulder, degenerative joint disease of the left knee, cardiac disease, cervical spine disease, and radiculopathy. Compl. ¶ 7. At the time of the filing of his complaint, he was forty-two years old, had completed high school, and previously worked as a corrections officer. Compl. ¶ 6. His two treating physicians were physiatrist and rehabilitations specialist Dr. Miriam Kanter and orthopedic surgeon Dr. John Handago.

### A. Treating Source Medical Evidence

Dr. Miriam Kanter

On August 25, 2011, Plaintiff, who worked as a corrections officer, reported a work-related neck injury while restraining an inmate to Dr. Miriam Kanter. R. at 422-23. Plaintiff complained of lower back pain. *Id.* Dr. Kanter stated that Plaintiff should attend physical therapy, do home exercise, and that he was partially disabled, although he could continue to work at his present job. R. at 423. On a follow-up examination on December 15, 2011, Plaintiff again complained of lower back pain. R. at 425-26. Dr. Kanter noted a 50% increase in sitting duration, and a 30 percent increase in standing and walking duration. R. at 424. In an examination on March 13, 2013, Dr. Kanter stated that Plaintiff could now lift 10 pounds, as opposed to 5 pounds previously, and that his walking and standing ability continued to increase. R. at 426. In an

examination on April 26, 2012, Dr. Kanter noted a 30% increase in sitting duration as well as a 10% increase in cervical mobility. R. at 428. Dr. Kanter also noted that Plainitff's lifting ability had decreased due to a recent shoulder surgery. *Id.*

In an examination on May 1, 2012, Dr. Kanter stated that Plaintiff was "partially disabled" and "eligible for sedentary work only from the standpoint of his knee," but was "totally disabled" due to his lower back injury. R. at 1472. In an examination on July 10, 2012, Plaintiff complained of lower back pain and left shoulder pain, and Dr. Kanter noted that Plaintiff achieved a 20% increase in shoulder mobility and an ability to perform activities of daily living at home such as cleaning and cooking. R. at 1467-68. In an examination on August 14, 2012, Dr. Kanter noted that Plaintiff was "totally disabled from his current position as a corrections officer" but "may work in a sedentary position from the standpoint of the knee" even though "he is totally disabled due to unrelated injuries to other body parts." R. at 1464. In subsequent examinations from April to September 2013, Dr. Kanter noted that Plaintiff had the ability to lift 12 pounds with improvements in shoulder mobility, walking, and standing. R. at 1438-47, 1450, 1452.

On October 8, 2013, Dr. Kanter completed a medical source statement, opining that Plaintiff retained the capacity to stand or walk for less than two hours, sit for less than six hours, and occasionally lift and carry five, but less than ten pounds, and frequently lift or carry less than five pounds. R. at 1509-10, *repeated at* 1523-24. Dr. Kanter opined that Plaintiff would need periods of bedrest during the workday, would require frequent breaks during the work day, would experience pain that would prevent him from performing an eight-hour workday, and would have difficulty concentrating on his work. R. at 1510. In a narrative report completed the same day, Dr. Kanter stated that she treated Plaintiff multiple times for his left knee, left shoulder, back, and left eye. R. at 1511-1517, *repeated at* 1525-30. Dr. Kanter questioned Plaintiff for his opinion on his ability to walk, stand, sleep, travel, perform activities of daily living, concentrate, and socialize. R. at 1514-15.

3

Dr. Kanter stated that Plaintiff will always have long standing complications associated with his cervical and lumbar spine, and that his ability to walk, stand, sit, bend, and lift have been greatly reduced due to surgical repair. R. at 1517. Dr. Kanter stated that Plaintiff might require lumbar spine or cervical spine surgery in the future. R. at 1517.

In December 2013, Dr. Kanter responded to ALJ Gonzalez's questionnaire regarding the frequency of treatment of Plaintiff, her credentials as a board certified physical medicine and rehabilitation specialist, continuing medical education, and the basis of her October 8, 2013 opinions regarding Plaintiff's abilities. R. at 1518-21.

Dr. John Handago

Dr. Handago treated Plaintiff for left shoulder pain. Plaintiff first saw Dr. Handago for left shoulder pain on September 1, 2011. R. at 1504. Dr. Handago performed surgery on Plaintiff, removing the osteochondroma. R. at 442.

Beginning in August 2012, Dr. Handago started treating Plaintiff for left knee pain. R. at 1499. On November 14, 2012, Dr. Handago performed arthroscopic surgery of Plaintiff's left knee with partial medial meniscectomy. R. at 446-47. After left knee surgery between January and October 2013, Plaintiff reported continued pain, but per Dr. Handago range of left knee motion was improving. R. at 1497, 1499.

On September 16, 2013, Dr. Handago completed a medical source statement, opining that in an eight-hour workday, Plaintiff was able to stand and/or walk less than two hours, sit for less than six hours, and lift more than five pounds but less than ten pounds. R. at 478. Dr. Handago opined that Plaintiff would require frequent breaks, that pain prevented him from working for eight hours, and that he had concentration problems. R. at 475. Dr. Handago supported his opinion by citing two diagnostic tests and the fact that he performed knee surgery and left shoulder surgery. R. at 479.

The ALJ sent Dr. Handago a letter in December 2013, requesting clarification of his medical opinion, to which the doctor did not respond. *See* R. at 329-333.

**B. Administrative Hearing**

At the administrative hearings, Plaintiff testified that he had previously worked as a corrections officer, school security supervisor, and payphone servicer. R. at 97-100. Plaintiff had not worked since August 2011 when he injured his neck while restraining an inmate. R. at 63. Plaintiff stated that he did light housework, but was very limited due to pain. R. at 66. Plaintiff stated that he could only lift his dominant right arm above his head. R. at 68. Plaintiff does not use a cane, but stated that his knees were sore. R. at 70.

Plaintiff testified that he had completed high school and went to vocational school for cooking and typing. R. at 84. Plaintiff stated that he paid Dr. Kanter $650 for her medical source statement and that the doctor asked him questions about his abilities to lift, carry, sit, and walk. R. at 91-93. Plaintiff attended physical therapy and was currently lifting four pounds. R. at 93. Plaintiff also saw a chiropractor. R. at 94.

A vocational expert, Linda Stein, also testified at the hearing. The ALJ asked the vocational expert to consider an individual of Plaintiff's age, education, and work history, who could perform sedentary work with the following limitations: occasional overhead reaching with the left arm; frequent overhead reaching with the right arm; occasional pulling and pushing with the left arm; occasional climbing of stairs, kneeling, and stooping; and frequent flexion, extension, and rotation of the neck. R. at 117. The expert stated that such an individual could not perform Plaintiff's past work, but could perform the following unskilled, sedentary jobs: telephone order clerk, telephone information clerk, painter, touchup screener, and printed circuit board assembly. R. at 117-19. The expert further stated that the limitation to occasional overhead lifting and pushing and pulling with the left arm would not change her response regarding available jobs. R. at 123-25.

5

## C. The ALJ's Decision

The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from August 15, 2011 through April 24, 2014. The ALJ found the following severe impairments: adhesive capsulitis of the left shoulder, Osgood Schlatter's disease of the left knee with meniscus injury, right ventricular enlargement, lumbar radiculitis, cervical spine radiculopathy, left knee anterior cruciate ligament (ACL) laxity, right shoulder joint arthrosis, and headaches. R. at 31. The ALJ then decided that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[2] except that he could only occasionally reach overhead with the non-dominant left upper extremity, and could frequently reach overhead with the right upper extremity. R. at 32. Plaintiff could occasionally push or pull with the left upper extremity and occasionally ascend stairs, kneel, crouch, and stoop. *Id.* The ALJ found that Plaintiff could frequently flex, extend, and rotate his neck, and must avoid working at heights. *Id.* In addition to the medical evidence, the ALJ considered Plaintiff's subjective complaints in assessing his RFC, but found they were not entirely credible. R. at 32.

The ALJ found that Plaintiff could not perform any past relevant work including correctional officer, security guard, central office repairer, or tree trimmer. R. at 41. However, after considering the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy such as those identified by the vocational expert. R. at 41-43. In arriving at this conclusion, the ALJ gave little weight to the opinions of Dr. Kanter and Dr. Handago. R. at 38-39.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

## STANDARD OF REVIEW

A court may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). The Supreme Court has defined substantial evidence to be "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

## DISCUSSION

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Gennardo v. Astrue*, 333 Fed. App'x 609, 610 (2d Cir. 2009) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must be unable to perform any "kind of substantial gainful work which exists in the national economy." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 42 U.S.C. § 423(d)(2)(A)).

The Commissioner must engage in a five-step sequential analysis to determine whether an individual is disabled under Title II of the Act. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

> [1] [T]he Commissioner considers whether the claimant is presently working in substantial gainful activity. [2] If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. [3] If the severity requirement is met, the third

7

> inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. If the claimant has such an impairment, there will be a finding of disability. [4] If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's [RFC] allows the claimant to perform his or her past work. [5] Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" . . . that the claimant could perform, taking into account, *inter alia*, the claimant's [RFC], age, education, and work experience.

*Kane v. Astrue*, 942 F. Supp. 2d 301, 305-06 (E.D.N.Y. 2013) (internal quotation marks and citations omitted).

The plaintiff has the burden of proof for the first four steps, while the Commissioner has the burden to prove the fifth step. *Id.* at 305. "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on other grounds on reh'g*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

Plaintiff moves for vacatur of the Commissioner's decision and remand for further administrative hearings on two grounds: (1) the ALJ misapplied the Commissioner's treating physician regulation at 20 C.F.R. § 404.1527 by not assigning "controlling" weight to Drs. Kanter and Handago's opinions; and (2) the ALJ neglected to address Plaintiff's limitations in his ability to reach and handle objects with the left arm and its consequent impact on the jobs available for Plaintiff. Both grounds lack merit.

Treating Physician Rule

The "treating physician rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be given to a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

8

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). "[T]he opinion of a treating physician that is inconsistent with other substantial evidence in the record is not entitled to controlling weight." *Pimenta v. Barnhart*, 05 CIV. 5698 (JCF), 2006 WL 2356145, at *5 (S.D.N.Y. Aug. 14, 2006). The regulations specify that when controlling weight is not given to a treating physician's opinion, the Court should consider the following factors in determining the weight to be given such an opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant.

*Abreu v. Astrue*, 11 Civ. 3719 (ALC), 2012 WL 4714892, at *2 (S.D.N.Y. Sept. 27, 2012); *see* 20 C.F.R. § 404.1527(c)(2). After weighing these factors, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Cichocki v. Astrue*, 534 Fed. App'x 71, 75 (2d Cir. 2013). A physician's finding that a plaintiff is "disabled" is not determinative. *Id.* at 74 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

In this case, the ALJ correctly applied the treating physician rule to Dr. Kanter's opinion. The ALJ gave little weight to Dr. Kanter's opinion because her conclusion that the Plaintiff could not engage in sedentary work was not supported by her own clinical findings. R. at 38. This was proper. *See Cichocki*, 534 Fed. App'x at 75 ("Because [treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his

9

opinion controlling weight."). Specifically, the ALJ noted on two occasions that Dr. Kanter stated that Plaintiff could do sedentary work. R. at 1464, 1472. Plaintiff contends that Dr. Kanter's use of "sedentary" was not the same as the Social Security Administration's regulatory definition and therefore not inconsistent with her findings, but the contention misses the point. Dr. Kanter's statements still support the conclusion that Plaintiff could still do work, just not that of his previous work.

The ALJ also gave other reasons for not deferring to Dr. Kanter's opinion. The ALJ noted that Dr. Kanter had documented in her treatment notes that Plaintiff had steadily increased his ability to sit, stand, and walk through physical therapy. R. at 38. Additionally, the ALJ appropriately noted that Dr. Kanter's opinion was affected by the claimant's own subjective allegations rather than her clinical findings (R. at 38) because at the hearing Plaintiff testified that he answered Dr. Kanter's questions regarding his ability to lift, sit, carry, and walk as Dr. Kanter finished her medical source statement. R. at 91-93. Finally, it was permissible under "any other factors deemed significant" for the ALJ to observe that Plaintiff paid $650 for the medical opinion which makes it unlikely that the doctor would issue a statement contrary to the interests of the patient. *See* 20 C.F.R. § 404.1527(c)(6). As such, the ALJ comprehensively explained his reasons for discounting Dr. Kanter's medical source statement. In doing so, he complied with the dictates of the rule. *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 7-8 (2d Cir. 2017).

Similarly, the ALJ correctly applied the treating physician rule to Dr. Handago's opinion. Plaintiff contends that Dr. Handago's opinion was consistent with the medical evidence, but provides no evidence for this contention. *See* Pl. Mem. at 22. The ALJ's decision to give "little weight" to Dr. Handago was supported by substantial evidence. Dr. Handago's conclusion was

not supported by his own findings or those of other treating sources. Significantly, Dr. Handago failed to respond to ALJ's request for a clarification of his medical opinion (R. at 329-333), given that Dr. Handago's statement was in check-box form without a narrative or much detail.

<u>Limitations in Reaching and Handling</u>

At step five of the sequential evaluation, the ALJ has the burden of proving that the claimant has "a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Roma v. Astrue*, 468 Fed. App'x. 16, 20 (2d Cir. 2012) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal citations omitted). Reliance on the latter is permissible when a claimant's nonexertional impairments significant erode the availability of jobs permitted by exertional limitations. *Bapp*, 802 F.2d at 605. An ALJ may also rely on a vocational expert's testimony regarding a hypothetical as long as the assumption relied upon is supported by substantial record evidence and accurately reflects the limitations and capabilities of the claimant. *McIntyre*, 758 F.3d at 141 (citations omitted).

Plaintiff contends that he cannot perform the unskilled sedentary jobs identified by the vocational expert (R. at 118-119) because they require frequent reaching and handling, an ability which Plaintiff lacks. Plaintiff argues that there is no evidence that he has the capacity to do such frequent reaching and handling throughout a 40 hour work day. Key to this claim is Plaintiff's contention that the hypothetical residual functional capacity questions posed by the ALJ to the vocational expert did not take into account the limitations of the left arm. But Plaintiff's contention is incorrect.

11

First, the ALJ did find at step two that Plaintiff had adhesive capsulitis of the left shoulder. R. at 2. Thus, in considering RFC, the ALJ factored in not only Plaintiff's occasional overhead reaching and pushing or pulling with the left upper extremity (R. at 32), but also that Plaintiff could use his right, dominant upper extremity for these functions. R. at 117. Significantly, the hypothetical questions posed to the vocational expert by the ALJ reflected that limitation on the left upper extremity. R. at 125. The vocational expert concluded that the capacity to perform the jobs she provided would not be affected by those left arm limitations. R. at 125. Accordingly, the ALJ's step five determination was proper. *See Burgess v. Colvin*, No. 13-CV-6177, 2014 WL 1875360, at *13 (W.D.N.Y. May 9, 2014).

## CONCLUSION

For the reasons set forth above, the Commissioner's Motion for Judgment on the Pleadings is **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings is **DENIED**. The Clerk of Court is respectfully directed to enter a judgment for the Commissioner and to close this case.

**SO ORDERED.**

Dated: September 18, 2017
New York, New York

ANDREW L. CARTER, JR.
United States District Judge